**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER L. CAREY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 5:03-0414** |
| | ) | |
| **TROY WILLIAMS, Warden,** | ) | |
| **FCI Beckley,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

On May 12, 2003, Petitioner filed an Application under 28 U.S.C. § 2241 for Writ of Habeas

Corpus by a Person in State or Federal Custody (Document No. 1.) stating grounds for claiming

entitlement to relief as follows[1]:

      A.      I wasn't given a fair DHO hearing.[2] FCI Captain and his brass are upset

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[2] 28 C.F.R. § 541.15 (a) and (i) provides as follows:

(a) Staff shall give each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident.

(i) When charges are to be referred to the Disciplinary Hearing Officer, the UDC shall advise the inmate of the rights afforded at the hearing before the DHO. The UDC shall ask the inmate to indicate a choice of staff representative, if any, and the names of any witnesses the inmate wishes to be called to testify at the hearing and what testimony they are expected to provide. The UDC shall advise the inmate that the inmate may waive the right to be present at the Institution Discipline hearing, but still elect to have witnesses and/or a staff representative appear in the inmates behalf at this hearing.

about a civil suit that's being prepared on the Warden.

B.      The Incident Report stated they found a cellular phone with a charger; but at DHO hearing, they claimed they lost the photo of the finding.

C.      Lt. Williams told me the phone was a cell phone and had no inside, so how is this a hazardous tool?

D.      Incident Report was never read to me by Lt. Williams. He falsely made the statement I accepted this phone.

E.      Federal BOP unlawfully found me guilty on an Incident Report which I didn't commit. The offense code 108 possession, manufacture or introduction of a hazardous tool.

F.      Phone was found under Inmate Matheny's locker, and he was found not guilty of the Incident Report.

G.      Lt. Williams who claims to have heard of the Incident Report lied about me

---

28 C.F.R. § 541.17 (g) states as follows:

(g) The Disciplinary Hearing Officer shall prepare a record of the proceedings which need not be verbatim. This record must be sufficient to document the advisement of inmate rights, the DHO's findings, the DHO's decision and the specific evidence relied on by the DHO, and must include a brief statement of the reasons for the sanctions imposed. The evidence relied upon, the decision, and the reasons for the actions taken must be set out in specific terms unless doing so would jeopardize institutional security. The DHO shall give the inmate a written copy of the decisions and disposition, ordinarily within 10 days of the DHO's decision.

28 C.F.R. § 541.19 provides as follows respecting appeals from decisions of Disciplinary Hearing Officers:

At the time the . . . Discipline Hearing Officer gives an inmate written notice of its decision, the . . . DHO shall also advise the inmate that the inmate may appeal the decision . . .. An inmate's initial appeal of a decision of the DHO should be filed directly to the appropriate Regional Office. The inmate should forward a copy of the DHO report or, if not available at the time of filing, should state in his appeal the date of the DHO hearing and the nature of the charges against the inmate. On appeals, the appropriate reviewing official (the Warden, Regional Director, or General Counsel) may approve, modify, reverse, or send back with directions including ordering a rehearing, any disciplinary action of the . . . Discipline Hearing Officer but may not increase any valid sanction imposed.

accepting responsibility for this phone.

H.    Counselor Paul Clark told the DHO that he was told about this phone floating in the unit.

I.    Unit team failed to supply me with the Administrative Remedies after constantly requesting for them.

J.    Federal BOP denied me adequate appealability due to timely filing of my administrative remedies which rested on the unit team's lack of service while in segregation.

K.    Federal BOP violated policy by holding me in segregation after the initial 72 hours passed on the hearing.

L.    FCI Memphis staff, which was my unit team at the time, was unresponsive to numerous requests, which violated my due process to appeal.[3]

On May 19, 2003, the undersigned filed an Order requiring Petitioner to demonstrate that he exhausted the entire administrative process before filing his Application. (Document No. 3.)

On June 13, 2003, Petitioner filed a Response to Court Order stating the bases for his claims more specifically. (Document No. 6.) Petitioner contends that the UDC failed to conduct proceedings within the prescribed time periods, the DHO failed to call his witnesses at the administrative hearing and prison staff attempted to prevent him from appealing the DHO's December 16, 2002, decision. Petitioner attaches documents indicating, among other things, that he complained that he was not provided assistance and the requisite forms in appealing the DHO's decision.

On September 14, 2005, the undersigned filed an Order requiring that Respondent file an Answer to the allegations contained in Petitioner's Application. (Document No. 19.) On October 19,

---

[3] Petitioner was in custody at FCI Memphis from October 9, 2001, to January 27, 2003, when he was transferred to FCI Beckley. The Bureau of Prisons Inmate Locator indicates that Petitioner is currently in community corrections in Cincinnati, Ohio.

2005, Respondent filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and Memorandum in Support. (Document Nos. 24 and 25.) Respondent contends as follows:

A.     The BOP afforded Petitioner all the due process required by the Supreme Court in Wolff v. McDonnell.

B.     The evidence relied upon by the DHO was sufficient for a finding of guilt in Petitioner's case.[4]

C.     Petitioner was not prejudiced by delay in receiving his disciplinary hearing report.

D.     Petitioner failed to exhaust administrative remedies.

Respondent attached the Declaration of Denise Gottlieb, a Paralegal Specialist and Administrative Remedy Clerk at the Mid-Atlantic Regional Office of the Bureau of Prisons, certifying that copies of documents indicating, among other things, Petitioner's filings of administrative grievances and appeals are true and accurate. (Document No. 25, Exhibit 1.)Respondent also attached the Declaration of Harold Williams, a Lieutenant at FCI Memphis, indicating that he investigated the circumstances underlying the charges contained in the Incident Report that Petitioner possessed a

---

[4] Correctional Officers searched Petitioner's cell November 12, 2002, and found a cell phone. Petitioner and his cell mate were placed in the Special Housing Unit pending an investigation. Lieutenant Williams delivered an Incident Report to Petitioner on November 13, 2002, charging Petitioner with a violation of Offense Code 108 (possession, manufacture or introduction of a hazardous tool). A Unit Disciplinary Hearing was held on November 14, 2002, and the matter was referred to a Disciplinary Hearing Officer (DHO). A Disciplinary Hearing occurred on November 26, 2002, and Petitioner was found guilty. The Court notes that Offense Code 108 is in the Greatest Category on the BOP's Prohibited Acts and Disciplinary Severity Scale. See 28 C.F.R. § 541.13, Table 3. The DHO issued his decision on December 16, 2002, finding Petitioner guilty of violating Offense Code 108 and assessing his penalty for this offense as 60 days in disciplinary segregation, disallowance of 41 days of good conduct time and loss of phone privileges for 1 year. Petitioner received a copy of the Disciplinary Hearing Offer Report on December 16, 2002. A copy of the Incident Report, the December 16, 2002, Disciplinary Hearing Officer Report and Petitioner's acknowledgment that he was informed of his rights in proceedings before the Disciplinary Hearing Officer and on appeal is attached to the Declaration of Harold Williams which is Exhibit 2 to Defendant's Memorandum in Support of his Motion to Dismiss or in the Alternative for Summary Judgment (Document No. 25.)

4

hazardous tool, the cell phone. (Id., Exhibit 2.) Lieutenant Williams attached copies of documents to his Declaration including the November 12, 2002, Incident Report, an Investigative Report, and the December 16, 2002, Discipline Hearing Officer Report. Respondent further attaches copies of unpublished decisions of the Northern District of West Virginia and the Fourth Circuit Court of Appeals. (Id., Exhibits 3, 4 and 5.) Finally, Respondent attaches the Declaration if Patricia Bartley, a Unit Manager at FCI, Memphis. (Id., Exhibit 6.) Ms. Bartley states that "unit team members carry and have available the Administrative Remedy Forms (BP-9s and BP-10s) to give to the inmates in the Special Housing Unit." She states further that "I have no recollection of [Petitioner] requesting a BP-10 form."

On November 10, 2005, Petitioner filed a Response in Opposition to Respondent's Motion. (Document No. 29.) Petitioner asserts, among other things that he "was wilfully denied access to administrative remedies." Petitioner attaches a copy of the Incident Report and documents pertaining to his attempts to exhaust administrative remedies. These latter documents indicate that Petitioner filed an Inmate Request to Staff Member on January 20, 2003, complaining that prison staff was not helping him in appealing the DHO's decision while he was in disciplinary segregation and otherwise complained after his transfer to FCI Beckley that they hindered him in filing appeals.

## DISCUSSION

Exhaustion of Administrative Remedies.

Federal prisoners challenging the execution of their sentence must exhaust administrative remedies prior to seeking *habeas* review under 28 U.S.C. § 2241. See Pelissero v. Thompson, 170 F.3d 442, 445 (4th Cir. 1999); Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994). Petitioner in this case did not do so, and therefore, his Petition must be dismissed.

The Bureau of Prisons' Administrative Remedy Program, 28 C.F.R. §§ 542.10 - 19, is a process "through which inmates may seek formal review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10. Depending upon at what level an inmate initiates it, the Bureau of Prisons' Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form known in prison slang as a "cop-out". 28 C.F.R. § 542.10. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d).[5] The Warden of the institution and the Regional Director must respond to the inmates Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. If the inmate's Request went initially to the Regional Director, the inmate may appeal an unfavorable response to General Counsel on a BP-11 form within 30 days after the Regional Director signed the

---

[5] 28 C.F.R. § 542.14(c)(2) states as follows:

The inmate shall place a single complaint or a reasonable number of closely related issues on the form. If the inmate includes on a single form multiple unrelated issues, the submission shall be rejected and returned without response, and the inmate shall be advised to use a separate form for each unrelated issue. For DHO and UDC appeals, each separate incident report number must be appealed on a separate form.

The Bureau of Prisons' Program Statement 1330.13 states respecting this regulation that "[p]lacing a single issue or closely related issues on a single form facilitates indexing, and promotes efficiency, timely and comprehensive attention to the issues raised."

response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., §
542.18. The administrative process is exhausted when General Counsel issues a ruling on the
inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete.

Petitioner had twenty days after receiving notice of the decision of the DHO to file an appeal
in the Office of the Regional Director thereby beginning the process of exhausting his administrative
remedies. To discern whether and to what extent Petitioner did so, the undersigned has examined
the computer printout attached to Ms. Gottleib's Declaration attached to Defendant's Memorandum
in Support of their Motion to Dismiss or in the Alternative for Summary Judgment (Document No.
25, Exhibit 1.). It appears that Petitioner received a copy of the DHO's decision on December 16,
2002, and submitted an appeal of the DHO's decision which was received at the Regional Office on
January 14, 2003, and designated Remedy ID: 287747-R1. The Regional Office rejected Petitioner's
appeal stating that "you must resubmit with your DHO packet to prove you are filing within 20 days
of receiving your packet." Petitioner apparently resubmitted his appeal at the Regional Office with
a copy of the DHO packet, and his further filing was received on January 27, 2003. His appeal
designated Remedy ID: 287747-R2 was again rejected because "you received your DHO packet on
12-16-2002 and did not file with the office until 01-14-2003." Petitioner made a further attempt to
appeal the DHO's decision at the Regional Office which was received on March 12, 2003, and
designated Remedy ID: 287747-R3. This appeal was rejected for the same reason. On April 3, 2003,
Petitioner filed an appeal at the office of the General Counsel which was designated Remedy ID:
287747-A1. This further appeal was rejected because "we concur with the regional office's rationale
for rejecting your appeal. Further, your appeal to this office is untimely." The undersigned finds,
therefore, that Petitioner was advised, and consequently was aware, of his rights as he went through
the disciplinary process including his right to appeal and where and when to do so, and failed to do

so in a timely manner thereby failing in attempting to challenge the DHO's decision administratively.

For this reason, Petitioner's Application under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State or Federal Custody (Document No. 1.) must be dismissed.

Petitioner contends that prison staff did not provide him with forms for appealing the DHO's decision to the Regional Office. Ms. Bartley states that unit team members usually carry the forms and hand them out at inmates' requests when making their rounds in the Special Housing Unit. The undersigned finds Petitioner's assertion that prison staff hindered him in filing an appeal on time unavailing in view Ms. Bartley's statement and the fact that he filed an appeal though it was deficient on January 14, 2003, about eight days late.

Petitioner's Claims of Failure of Due Process.

While the undersigned finds that this matter must be dismissed because Petitioner failed to exhaust administrative remedies, the undersigned believes that some attention to the merits of Petitioner's claims is in order. Petitioner essentially alleges that he was denied due process in disciplinary proceedings which culminated in the December 16, 2002, decision of the DHO.

In considering an inmate's application for *habeas* relief under 28 U.S.C. § 2241, the Court must consider whether the Petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Rose v. Hodges, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975). Although the Fifth Amendment of the United States Constitution provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law", the range of protected liberty interests for defendants convicted and confined in prison are significantly reduced for the period of incarceration. See U.S. Const. amend. V; Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). The fact of conviction and imprisonment implies the defendant's transfer of his

liberty to prison officials, who in their broad discretion, administer his sentence. Gaston, 946 F.2d at 343. Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." Id. (emphasis added) To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). The Supreme Court held in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that interests protected by the Due Process Clause "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . ., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id., 515 U.S. at 484, 115 S.Ct. at 2300 (Citations omitted). Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life []", the inmate's claims have no merit. Id. When a disciplinary sanction impacts the duration of a federal inmate's sentence, a protected liberty interest in the inmate's release from confinement is implicated, and minimal procedural guarantees are recognized. Ponte v. Real, 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985). The United States Supreme Court has determined that to comport with the requirements of due process, prison officials must provide the following procedural safeguards to a prisoner when conducting disciplinary hearings: (1) written notice of the charged violations at least twenty-four hours prior to the prisoner's appearance before the disciplinary official, (2) a written statement by the disciplinary official as to the evidence relied on and the reasons for the disciplinary action, (3) the right to call witnesses and present documentary evidence in the prisoner's defense, (4) non-attorney representation when the prisoner is illiterate or the disciplinary proceeding involves

complex issues, and (5) a neutral and detached hearing body. Wolff, 418 U.S. 539, 564-71, 94 S.Ct. 2963, 2979-82, 41 L.Ed.2d 935 (1974); Morrissey v. Brewer, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972); Segarra v. McDade, 706 F.2d 1301, 1304 (4th Cir. 1983). BOP regulations are clearly written in view of the constitutionally required minimum, but the failure of prison officials to follow their own internal policies, procedures or regulations alone is insufficient to make out a due process violation when a protected liberty interest is evident as long as the constitutionally required minimum is met. See Myers v. Klevenhager, 97 F.3d 91, 94 (5ᵗʰ Cir 1996); Giovanni v. Lynn, 48 F.3d 908, 913 (5ᵗʰ Cir. 1995), cert. denied, 516 U.S. 860, 116 S.Ct. 167, 133 L.Ed.2d 109 (1995). The undersigned notes additionally that the Supreme Court has indicated that prison regulations are not designed to confer rights on or benefits to inmates. Rather, they are primarily designed to guide correctional officials in the administration of prisons. Sandin v. Conner, 515 U.S. 472, 481- 482, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

The right to present evidence in disciplinary proceedings is not unqualified; prison officials possess discretionary authority to exclude evidence that is neither materially relevant, nor exonerating. Wolff, 418 U.S. at 566-67, 94 S.Ct. at 2979-80; see also Piggie v. McBride, 277 F.3d 922, 924 (7th Cir. 2002); Moses v. Bledsoe, 2004 WL 3317657, *3 (N.D.W.Va. Sept. 28, 2004), aff'd, 124 Fed.Appx. 787 (4th Cir. Mar. 29, 2005)(unpublished). The BOP has promulgated regulations providing that "[t]he reporting officer and other adverse witnesses need not be called if their knowledge of the incident is adequately summarized in the Incident Report and other investigative materials supplied to the DHO." 28 C.F.R. § 541.17(c); BOP P.S. 5270.07. "[T]he *Wolff* Court specifically stopped short of allowing an inmate to call adverse witnesses in order to subject them to cross-examination." Barry v. Whalen, 796 F.Supp. 885, 895 (E.D. Va. 1992).

Having thoroughly examined the record in view of the foregoing legal framework, the undersigned finds no indication of error of constitutional magnitude in the disciplinary proceedings. Petitioner clearly received all documents pertinent to the charges against him, was advised of his rights and had ample opportunity to present a defense to those charges. While the record indicates that prison staff did not meet deadlines as the regulations provide, the Court must regard these failures harmless. The undersigned further finds that prison staff and the DHO acted fully within their discretion in developing the evidence which resulted in the finding that Petitioner was guilty of the Offense Code violation. The undersigned therefore concludes that Petitioner's claims are without merit.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual and legal analysis and conclude that the Petitioner's Application under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State or Federal Custody (Document No. 1.) should be dismissed. Accordingly, it is **RECOMMENDED** that the District Court **GRANT** the Respondent's Motion to Dismiss (Document No. 24.), **DISMISS** Petitioner's Application and **REMOVE** this matter from the Court's docket.

The parties are notified that this Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(e) of the Federal Rules of Criminal Procedure, the parties shall have thirteen (13) days from the date of filing of these Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Findings and

Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record and Petitioner, whose current address is

> Mr. Christopher L. Carey
> Talbert House for Men
> Inmate No. 63359-061
> 2216 Vine Street
> Cincinnati, Ohio 45219.

Date: August 15, 2006.

R. Clarke VanDervort
United States Magistrate Judge

12